RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 15a0226p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

_____

GARRY JONES,

                *Petitioner-Appellee,*

    *v.*

THOMAS K. BELL, Warden,

                *Respondent-Appellant.*

No. 14-1014

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:10-cv-14476—Robert H. Cleland, District Judge.

Argued: January 13, 2015

Decided and Filed: August 13, 2015[*]

Before: BOGGS and McKEAGUE, Circuit Judges; PEARSON, District Judge.[**]

_____

**COUNSEL**

**ARGUED:** Raina I. Korbakis, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellant. Benjamin W. Snyder, LATHAM & WATKINS LLP, Washington, D.C., for Appellee. **ON BRIEF:** Raina I. Korbakis, Laura Moody, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellant. Benjamin W. Snyder, LATHAM & WATKINS LLP, Washington, D.C., for Appellee. Garry Jones, Kincheloe, Michigan, pro se.

---

[*]This decision was originally issued as an "unpublished decision" filed on August 13, 2015. The court has now designated the opinion as one recommended for full-text publication.

[**]The Honorable Benita Y. Pearson, United States District Judge for the Northern District of Ohio, sitting by designation.

1

---

**OPINION**

---

McKEAGUE, Circuit Judge.  As in our most recent en banc case, *Hill v. Curtin*, — F.3d —, 2015 WL 4114658 (6th Cir. July 9, 2015), we review a Michigan habeas petitioner's claim based on *Faretta v. California*, 422 U.S. 806 (1975).  The petitioner, like the one in *Hill*, argues that the state courts' denial of his day-of-trial request to represent himself is an unreasonable application of *Faretta*.  But unlike the petitioner in *Hill*, the one here did not raise this claim on direct appeal.  He cannot get around this procedural default—nor, even if he could, would he prevail on the merits.  The district court seeing things differently, we reverse.

I

Garry Jones, the petitioner here, committed two armed robberies in Michigan.  The first one started with his seemingly innocent request to borrow a hundred dollars from an acquaintance.  When the acquaintance tried to give Jones the money, Jones pulled out a semi-automatic handgun and said, "Give me all your sh*t."  *People v. Jones*, No. 281464, 2008 WL 5382926, at *1 (Mich. Ct. App. Dec. 23, 2008).  The acquaintance complied, and a man in a ski mask gathered his belongings.  Jones and the masked man took the belongings, stole the Lexus the acquaintance was driving, and drove away.  The second robbery came eighteen days later— and it involved the same victim.  Jones lay in wait in front of the acquaintance's home and pointed a gun at him when he got home from work, demanding all of his money.  The acquaintance again complied.  *Id.*  The police later found and arrested Jones.

The State of Michigan charged Jones with two counts of armed robbery and two counts relating to using a firearm.  Michigan appointed Luther Glenn to represent Jones.  After the final pretrial conference, the judge ordered Jones to remain at the local jail "to prepare for trial" with Glenn.  R. 8-4 at 6–7.  But Jones did not think Glenn was prepared.  *See* R. 8-1 at 22–23.  In a grievance and letter against Glenn, Jones asked the court to appoint a different attorney to his case—but he never requested to represent himself at trial.

On the morning of the first day of trial, Jones immediately objected, explaining that he was unhappy with his attorney.  He said:

> I explained to [Glenn] that I didn't want him to represent me because he's not prepared for my case.  And I have an attorney grievance against him that I have filed.  And this case is my personal copy, if you would like to read it.  Because you writted me down here last week and [Glenn] hasn't discussed anything pertaining to any of my issues on both of my cases.  And he's trying to walk me in here right now and he's not prepared.

R. 8-5 at 3.  But the court disagreed and expressed concern about delaying the impending trial.  It said:

> I think [Glenn] is prepared.  And I talked to him extensively beforehand about these issues.  And he's an excellent lawyer . . . .  Your case has been adjourned before.  It's an old case.  And I'm not going to adjourn it again . . . .  [I]t's a very old case on my docket.  It's over ninety-one days, which is beyond the statistics . . . .  [W]e're going to go forward and going to go forward with this lawyer [Glenn].  So, have a seat now and try to be respectful.

*Id.* at 3–5.

Having denied Jones's request for a new attorney, the court asked Jones whether he wanted "to accept [the previously read plea] or go to trial."  The following colloquy occurred:

> THE DEFENDANT: I would like to represent myself at trial, your Honor.
>
> THE COURT: Well, I don't think you can handle that.  So, I'm going to deny it.
>
> THE DEFENDANT: Can you place that on the record?
>
> THE COURT: And I take that as a no [about accepting the plea offer].  He wants to go to trial.  It's on the record.  All right.  We're going to bring the jury in now and get started.

*Id.* at 7–8.

Trial began.  And Jones did not raise the self-representation issue again.  A Wayne County Circuit Court jury found him guilty on all counts, and the trial judge sentenced him.

Jones appealed with representation of counsel.  He raised claims relating to ineffective assistance of counsel (for his trial counsel's failure to call certain witnesses), sufficiency of the evidence (because the victim's trial testimony was allegedly not credible), and cruel and unusual punishment (for his allegedly disproportionate punishment).  But he did not raise the self-

representation issue.  The state appellate court affirmed his conviction.  *People v. Jones*, Nos. 281464, 281465, 2008 WL 5382926 (Mich. Ct. App. Dec. 23, 2008).  And it denied his motion for a remand for a hearing on his ineffective-assistance-of-counsel claim.  The Michigan Supreme Court denied him leave to appeal the same issues.  *People v. Jones*, 764 N.W.2d 257 (Mich. Apr. 28, 2009) (unpublished table decision).  His conviction became final.

Jones then filed a motion for relief from judgment before the state trial court.  He argued that he was deprived of (a) the right to represent himself; (b) effective assistance of trial and appellate counsel; and (c) due process at trial.  The trial court denied Jones's motion under Michigan Court Rule 6.508(D)(3).  In doing so, it found that Jones's self-representation claim lacked merit, which triggers our deferential AEDPA standard.  R. 8-11 at 3, 5; *accord* Appellee Br. 3, 12–13 (agreeing that this standard applies).  And it found that Jones could not establish "actual prejudice" to excuse his procedural default because he could not show that "but for the alleged error, [he] would have had a reasonably likely chance of acquittal" or that the error was "so offensive to the maintenance of a sound judicial process" that the conviction should not stand.  *Id.* (quoting Mich. Ct. R. 6.508(D)(3)(b)(i), (iii)).  Jones filed a delayed application for leave to appeal and a motion for remand in the Michigan Court of Appeals.  The court denied both "for failure to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)." R. 8-11.  The Michigan Supreme Court did the same thing.  *People v. Jones*, 789 N.W.2d 471 (Mich. Oct. 26, 2010) (unpublished table decision).

Having exhausted all his state-court routes, Jones took his case to federal court.  He filed a petition for writ of habeas corpus in the Eastern District of Michigan, arguing that his conviction was obtained in violation of his Sixth Amendment right to self-representation and that ineffective assistance of appellate counsel excused his failure to raise the issue on direct appeal.  The district court agreed.  *Jones v. Bell*, No. 2:10–CV–14476, 2013 WL 6729891 (E.D. Mich. Dec. 19, 2013).  It held that the trial court's denial of Jones's request to represent himself satisfied 28 U.S.C. § 2254(d) because it was an unreasonable application of *Faretta*.  *Id.* at *3– *6.  And it held that Jones's appellate counsel's failure to raise the *Faretta* issue gave Jones the "cause" and "prejudice" to excuse his procedural default.  *Id.* at *6–*7.  The court therefore conditionally granted Jones's petition on December 19, 2013.  *Id.* at *8.

The State appealed.  We review the district court's grant of habeas relief de novo. *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007).

## II

On habeas review, we ask whether a state-court merits determination "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court."  28 U.S.C. § 2254(d)(1); *accord* Appellee Br. 3.  But where the state court relies on a state procedural rule to deny a claim, federal courts lack jurisdiction to reach the merits.  *Coleman v. Thompson*, 501 U.S. 722, 729–30, 753 (1991).  The State argues that Jones procedurally defaulted his self-representation claim and that, in any event, the claim does not meet the deferential AEDPA standard.  We agree with both arguments.

### A.  Procedural Default

All agree that Jones procedurally defaulted his self-representation claim.  Appellant Br. 18–19; Appellee Br. 26; *Jones*, 2013 WL 6729891, at *6–*7.  Jones failed to raise the claim on direct review.  And he failed to meet the requirements of Michigan Rule 6.508(D)(3) because he could not show actual prejudice.  R. 8-11 at 3, 5.  That default—an adequate and independent state ground barring review of Jones's conviction—typically removes our jurisdiction to hear the case.  *Coleman*, 501 U.S. at 750–51, 753.  We respect sovereign state courts by not interfering with judgments based on state procedural rules, *id.*—like this one, based on Michigan's rule that all claims must be raised on direct review or meet 6.508(D)(3).  *Amos v. Renico*, 683 F.3d 720, 733 (6th Cir. 2012); *Ivory v. Jackson*, 509 F.3d 284, 292–93 (6th Cir. 2007).

Our review is thus barred unless Jones can excuse this procedural default.  That is no easy task.  He may do so by showing (1) "cause" for the default and (2) "actual prejudice" resulting from the alleged constitutional violation, *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)—which the Michigan courts already found that he failed to do.  Because Jones cannot excuse his procedural default, we lack jurisdiction to hear his habeas claims on the merits.

1. Cause

Jones argues that his appellate attorney's ineffective assistance serves as the cause to excuse his default. Ineffective assistance of counsel constitutes "cause" to excuse a default only if it is "so ineffective as to violate the Federal Constitution," *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000)—*i.e.*, it meets *Strickland*'s ineffectiveness standard. *Byrd v. Collins*, 209 F.3d 486, 519 (6th Cir. 2000). Under that standard, Jones must show (i) that his appellate counsel's "performance was deficient" and (ii) that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This is "a high burden" to meet. *Davis v. Lafler*, 658 F.3d 525, 536 (6th Cir. 2011) (en banc). And only if Jones meets the high burden do we ask whether there was "actual prejudice" to excuse the procedural default.

(i) *Constitutionally Deficient Performance*. Jones can show constitutionally deficient performance if his counsel committed an error "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Jones argues that the failure to raise the self-representation claim alone meets that standard. But it is not deficient performance to leave some "colorable issue[s]" out; indeed, it may even be the *best* type of performance. *Jones v. Barnes*, 463 U.S. 745, 753–54 (1983). And a "[c]ounsel's performance is strongly presumed to be effective." *Scott v. Mitchell*, 209 F.3d 854, 880 (6th Cir. 2000). The State thus argues that the decision not to raise the self-representation claim was "strategic." Appellant Br. 21. To resolve the issue, we consider a number of factors, including whether "the omitted issues [were] 'significant and obvious'" and whether they were "clearly stronger than those presented" in the actual appeal. *McFarland v. Yukins*, 356 F.3d 688, 710–11 (6th Cir. 2004). The answer mostly turns on whether Jones "would likely have prevailed on [his] appeal" had the self-representation claim been raised. *Id.* at 710.

It is not clear that Jones would have prevailed on his day-of-trial request to represent himself—even on direct review. Michigan recognizes that day-of-trial requests may be validly rejected as untimely because they disrupt the administration of justice. *People v. Hill*, 773 N.W.2d 257, 257 (Mich. 2009); *People v. Russell*, 684 N.W.2d 745, 757 (Mich. 2004). And the Michigan courts may well have upheld this denial as untimely and disruptive. *Cf. Hill*, 773 N.W.2d at 257. However, Jones had a much better chance to prevail on that claim than, say,

his sufficiency claim, where his counsel raised credibility issues that are irrelevant to the actual sufficiency of the evidence.  R. 8-8; *see United States v. Barnett*, 398 F.3d 516, 522 (6th Cir. 2005).  This question is close.  We will assume without deciding or taking a position either way that Jones can show deficient performance.

(ii) Strickland *Prejudice*.  Even if Jones is able to show deficient performance, he still must also show *Strickland* prejudice.  He can do so by establishing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  For Jones's allegation of ineffective assistance of *appellate* counsel, there must be a reasonable probability that the result of the *appeal* would have been different.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000).

Assuming deficient performance, there was *Strickland* prejudice as well.  The Supreme Court has held that "denial [of the right to self-representation] is not amenable to 'harmless error' analysis"; it is structural error.  *McKaskle v. Wiggins*, 465 U.S. 168, 177 n.8 (1984).  So if Jones's *Faretta* claim had been meritorious on direct review, it would have resulted in an automatic new trial—a different result than on his actual direct appeals, which resulted in affirmance of his conviction.  *Jones*, 2008 WL 5382926.  Because there is at least a reasonable probability of success of direct review, and because the outcome would have been different, there would be enough for *Strickland* prejudice, assuming there was deficient performance.

## 2.  Actual Prejudice

But that doesn't end this part of the analysis:  Habeas petitioners must *additionally* show "actual prejudice" to excuse their default—even if the error that served as the "cause" is a structural one that would require a new trial.  *Ambrose v. Booker*, 684 F.3d 638, 649 (6th Cir. 2012); *see Francis v. Henderson*, 425 U.S. 536, 542 (1976).  Contrary to Jones's contentions, *see* Appellee Br. 28–29, actual prejudice to excuse a habeas petitioner's procedural default requires more than the prejudice prong under *Strickland*.  *See Ambrose*, 684 F.3d at 652.  In fact, we do not presume actual prejudice even when the counsel's error resulted in *Strickland* prejudice.  *Id.* at 649.  To do so, we would "ignore[] fundamental differences between direct and collateral review in our system of dual sovereigns."  *Keith v. Mitchell*, 455 F.3d 662, 675 (6th Cir. 2006).

We rather look to the record to determine if the outcome *of the trial* would have been different. *Ambrose*, 684 F.3d at 652; *see also Hollis v. Davis*, 941 F.2d 1471, 1480–83 (11th Cir. 1991), *adopted in Ambrose*, 684 F.3d at 652. The "most important aspect to the inquiry is the strength of the case against the defendant" and whether a trial without errors would still have resulted in *conviction*. *Ambrose*, 684 F.3d at 652.

The *Ambrose* case explains the actual-prejudice rule with respect to structural errors. A computer glitch systematically excluded African Americans from jury pools. But the defendant's counsel did not object to the then-unknown glitch at trial or on appeal, causing the claim to become procedurally defaulted. The defendant learned of the glitch after exhausting his appeals and filed for habeas relief based on the Sixth Amendment's fair cross-section requirement. The district court held that because the glitch was unknown, it constituted "cause" to excuse the default. And the district court held that since the claim would have required automatic reversal and retrial, actual prejudice should be presumed from the merit of the Sixth Amendment claim. We disagreed with the actual-prejudice conclusion, explaining that even when errors that constitute "cause" would result in *automatic reversal* on appeal, courts must still look for something more: *actual* prejudice. *Ambrose*, 684 F.3d at 649–52; *see also Keith*, 455 F.3d at 673–74. Because of comity and federalism, the petitioner must show that "the outcome would have been different" "regardless of the nature of the underlying constitutional claim." *Ambrose*, 684 F.3d at 650–51. And that "outcome" refers to the *actual* and *eventual* outcome of the *trial*. *See id.*

Neither Jones nor the district court attempted to show that the outcome *at trial* would have been different had Jones represented himself. Nor is there any indication in the record that it would have been. They instead conflate *Strickland* prejudice with procedural-default "actual prejudice." They are distinct. And as *Ambrose* makes clear, a meritorious structural claim does not necessarily lead to actual prejudice to excuse procedural default. Lacking any evidence of actual prejudice, Jones has not made the requisite showing to excuse his procedural default, even if *Strickland* were met.

## B. Merits

Yet even if Jones were able to excuse his procedural default, his claim fails on the merits. Jones has two ways to obtain habeas relief, since both parties agree that AEDPA review is proper. The state-court determination must have either (1) "resulted in a decision that was contrary to . . . clearly established Federal law, as determined by the Supreme Court"; or (2) involved an "unreasonable application of" the same. 28 U.S.C. § 2254(d)(1). This standard "is difficult to meet"—as the Supreme Court has repeatedly and "recently reminded the Sixth Circuit." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks omitted). The state-court error must amount to an obvious and extreme constitutional malfunction. The district court held that this one did. But under this highly deferential standard, it did not.

*First*, the state courts' decisions were not contrary to *Faretta*. A state-court decision is "contrary to" federal law only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). Federal law is clearly established "only when it is embodied in a holding" of the Supreme Court; dicta does not count. *Thaler v. Haynes*, 559 U.S. 43, 47 (2010).

Jones relies on *Faretta*, which holds that a trial court violates the Sixth Amendment when it denies a defendant's voluntary and intelligent self-representation request. 422 U.S. at 835–36. But that's not all. As we recently explained sitting en banc, *Faretta*'s holding contains a timeliness component. *Hill*, 2015 WL 4114658, at *4; *see Martinez v. Court of Appeal of Cal., Fourth Appellate Dist.*, 528 U.S. 152, 161–62 (2000). "[A]s a matter of clearly established law[,] [*Faretta*] can only be read to require a court to grant a self-representation request when the request occurs *weeks before trial*"—not on the morning of trial. *Hill*, 2015 WL 4114658, at *5 (emphasis added). The trial court's decision here was therefore not "contrary to" *Faretta*'s holding, because Jones's request was made on the *first day* of trial, as opposed to weeks before trial. *Accord id.* at *4–*5.

*Second*, the state courts did not unreasonably apply *Faretta*. A state court unreasonably applies federal law when its decision is "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded

disagreement." *White*, 134 S. Ct. at 1702 (internal quotation marks and citations omitted).  This is an extremely high bar because habeas relief is an "extraordinary remedy," *Bousley v. United States*, 523 U.S. 614, 621 (1998), and "state-court decisions [are] given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (internal quotation marks omitted). Habeas review serves only as "a guard against extreme malfunctions" and not as "a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (internal quotation marks omitted).

The trial court's denial of Jones's morning-of-trial request to represent himself was not an extreme constitutional malfunction; fairminded jurists could disagree on whether the Sixth Amendment right to self-representation—as currently defined by the Supreme Court—covers it. "[T]he right to self-representation is not absolute"; it can be outweighed by other concerns like the timing of the request. *Martinez*, 528 U.S. at 161; *see Hill*, 2015 WL 4114658, at \*4.  No Supreme Court case has filled the gap between requests made weeks before trial and the day of trial, so courts have "leeway" "in reaching outcomes in case-by-case determinations." *Harrington*, 562 U.S. at 106; *see Hill*, 2015 WL 4114658, at \*5–\*6.  The Michigan courts did not have to extend *Faretta*'s holding to apply to the morning-of-trial factual scenario—in this case or in *Hill*.  Just as in *Hill*, then, the Michigan courts did not unreasonably apply *Faretta*.

Jones disagrees.  He argues that this case is different than *Hill* because no state-court decision here explicitly denied his request as "untimely."  True enough; no state court used those words.  But context matters.  And the record—at least from our highly deferential vantage point, *see Holland v. Jackson*, 542 U.S. 649, 655 (2004) (per curiam)—shows that the trial court in fact acted because of the untimeliness of Jones's request.  Right before Jones made his self-representation request, he requested new counsel.  And the court responded to this request by expressing several timeliness concerns.  It commented that Jones's "case has been adjourned before" and is "an old case[,] . . . over ninety-one days, which is beyond the statistics."  R. 8-5 at 3–5.  It knew that granting any self-representation request would require another adjournment—*delay*—and it was "not going to adjourn [the case] again."  *Id.*  And it knew that the jurors were waiting just outside the courtroom.

With all that looming, Jones only then made his self-representation request. In light of this context, the trial court's apparent conclusory denial ("I don't think you can handle that")—when read deferentially—isn't conclusory at all: The court meant that Jones could not handle self-representation *at that time*, exactly what the trial court in *Hill* said. It incorporated its timeliness concerns, articulated in its previous ruling, into this denial. Plus, even if the record is ambiguous on the point, the state court gets "the benefit of the doubt": We read the record to favor the state court's decision because States are "presum[ed]" to "know and follow the law." *Visciotti*, 537 U.S. at 24. The court didn't need to announce certain magical words. At least on habeas review, it denied Jones's request for a legitimate reason: the timing of the request and the further delay it would cause the impending trial.

That's not legitimate, Jones responds, because Michigan did not have a clearly established self-representation timing rule *before* applying it Jones. Timing questions are "question[s] of state procedural law," Jones argues, and when a state court does not "actually enforce[] [the] procedural rule," federal courts should ignore the State's *post-hoc* justification. Appellee Br. 17 (quoting *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013)).

Jones's counsel made this same argument in an amicus brief in *Hill*, and the en-banc court rejected it. We held it was forfeited, but we went on to say that the argument is "without merit" "[i]n any event." *Hill*, 2015 WL 4114658, at *7 n.2. We reasoned that "Michigan law does not recognize a per se rule precluding a day-of-trial assertion of the right to self-representation." *Id.* Like that case, "no per se procedural bar was invoked in this case"; the Michigan courts instead considered the facts and circumstances—that granting the request at such a late stage would cause delay and disrupt the proceeding—and it denied the request within the limits of *Faretta*. *Id.*

We add to the en banc court's reasoning here: Jones's response misunderstands the timing element at play. It is not a state-court procedural rule regarding the timing to invoke one's right of self-representation; it is a federal-law substantive rule—part of *Faretta*'s holding—about the limits of the self-representation right. Analyzing a state court's application of *Faretta*, then, *necessarily* includes analyzing its holding with respect to timing, for timing is part of a court's *substantive* analysis under *Faretta*. *See id.* at *4. The cases Jones cites are

different in that they involve constitutional rights that do not include timing as part of their substantive analysis but rather where state courts created timing rules to enforce substantive rights. Appellee Br. 18–19. Contrary to these holdings, *Faretta*'s holding *itself* has a timing element. *Hill*, 2015 WL 4114658, at *4. So denying a self-representation request because of timing can be based on the nature of the *federal* right, not on the *state* procedure. These Michigan courts accordingly did not need a previously announced state procedure to deny Jones's right; they permissibly could base their denial on the scope of the federal right itself.

Moving on, Jones, like Hill before him, also relies on *Moore v. Haviland*, 531 F.3d 393 (6th Cir. 2008), but it does not help him. There, we held that a mid-trial invocation of the right to self-representation was timely. *Id.* at 402–04. Jones says that *Moore* alone "requires a grant of relief here." Appellee Br. 23; *see id.* at 23–26. And the district court agreed. *Jones*, 2013 WL 6729891, at *6. But *Moore* is "readily distinguishable." *Hill*, 2015 WL 4114658, at *7. The defendant in *Moore* raised his self-representation request *as soon as* his "grounds for dissatisfaction with counsel's representation arose—and he then acted swiftly." *Moore*, 531 F.3d at 403. Jones did not. His dissatisfaction arose well before he made his self-representation request, as evidenced by the grievances he filed against his trial counsel in the weeks leading up to trial. *See* R. 8-1 at 22–23. Jones then, unlike Moore, did not "act[] swiftly" in making his request after his dissatisfaction with counsel arose. *Moore*, 531 F.3d at 403. And thus his claim, unlike Moore's, fails on timeliness grounds.

Nor, finally, must we grant habeas relief "on the ground that the trial court did not inquire into the basis of Hill's self-representation request." *Hill*, 2015 WL 4114658, at *4. Simply put, "[i]t is not clearly established that a trial court must conduct a *Faretta*-compliant inquiry" when denying a self-representation request on the morning of trial. *Id.* at *5.

The Michigan courts decisions neither contradicted nor unreasonably applied clearly established federal law.

## III

For these reasons, we reverse the district court's grant of habeas relief.