NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0596n.06

No. 16-2079

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

JOHN MARK JEFFRIES,

        Petitioner-Appellant,

v.

DEWAYNE BURTON, Warden,

        Respondent-Appellee.

)
)
)
)
)
)
)
)
)
)
)
)

**FILED**

Oct 31, 2017
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

Before: BOGGS, BATCHELDER, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge.  A Michigan jury convicted John Mark Jeffries of second-degree murder and other crimes committed during a 2006 drug deal gone wrong.  The district court denied his petition for federal habeas relief.  We affirm.

I.

In 2006, Jeffries arranged to buy ten pounds of marijuana from Gregory Bradley for $10,000.  To complete the sale, Jeffries and his friend James (whom he identified at trial as the late James Dobbins) met Bradley, Wayne Slanaker, and Gregory Romej at Slanaker's house in Dearborn Heights, Michigan.  When Jeffries saw a sample of the marijuana, however, he told Bradley that it "was some bullshit weed, that [he] didn't want it, that [he] could get better."

What happened next was the principal dispute at trial.  Romej testified that Jeffries struck a better deal for the marijuana, went to the car to get the money, and after returning tried to take the drugs at gunpoint.  Jeffries, for his part, testified that he had brought the cash—but no gun—

and started to leave after refusing to buy the "bullshit weed." Jeffries also said that Bradley and Slanaker tried to take his money, and that Slanaker pointed a gun at him. Nobody disputes that Jeffries and Slanaker tussled over a gun, whoever pulled it; that gunshots killed Bradley and wounded Slanaker (who died before trial from an unrelated cause); or that Jeffries and James fled.

The jury evidently believed Romej over Jeffries, and returned guilty verdicts on charges of second-degree murder, assault with intent to do great bodily harm less than murder, felon in possession of a firearm, and felony firearm. *See* Mich. Comp. Laws §§ 750.317, 750.84, 750.224f, 750.227b. The trial court sentenced Jeffries to a total of 37 to 67 years' imprisonment. In state court, he brought a direct appeal and a motion for relief from judgment, without success. Jeffries thereafter filed a federal habeas petition, which the district court denied. This appeal followed.

II.

We review de novo the district court's order denying Jeffries's habeas petition. *See Babick v. Berghuis*, 620 F.3d 571, 576 (6th Cir. 2010). In doing so, we choose to cut to the merits of this case rather than first address the question whether Jeffries's claims are procedurally defaulted. *See Storey v. Vasbinder*, 657 F.3d 372, 380 (6th Cir. 2011).

Jeffries first argues that the trial court unduly hampered his defense because, he says, it did not allow him to testify fully about his version of events on the night of the shootings. Specifically, he wanted to testify that (in his version) Bradley and Slanaker had threatened him before Slanaker pulled a gun on him. The trial court excluded the testimony on hearsay grounds. In doing so, the court erred: the threats were not hearsay because Jeffries offered them to explain his state of mind and his reaction upon hearing them, not for their truth. *See People v. Lee*,

218 N.W.2d 655, 666-67 (Mich. 1974). But that state-law error can give rise to federal habeas relief only if it rendered Jeffries's trial fundamentally unfair, in violation of due process. *See Moreland v. Bradshaw*, 699 F.3d 908, 923 (6th Cir. 2012).

In Jeffries's view, that standard is met here: he needed to tell the jury Bradley's and Slanaker's precise words to prove that they tried to rob him and not vice versa. Jeffries did testify, however, to the following events. He entered Slanaker's house and showed the other men that he was unarmed and carrying $12,000 in cash. Jeffries refused to buy the "bullshit weed" and tried to leave, but "was told [he] wasn't leaving the house with the money." He exchanged "intense" words with Bradley and Slanaker. Slanaker pulled a gun and pointed it at Jeffries's face; Jeffries grabbed the gun, but "never had full possession" of it. The two men fought over the gun, the gun went off, and shots hit Bradley and Slanaker. This testimony was enough to convey Jeffries's defense that he was the victim, not the perpetrator, of an attempted armed robbery. The particulars of Bradley's and Slanaker's purported threats would have added little substance. There was no constitutional error.

Jeffries also contends that his appellate counsel should have raised this same issue on direct appeal, where the court could have granted relief on state-law grounds rather than only federal constitutional ones. But we presume that appellate counsel was effective, unless he ignored issues that were "clearly stronger" than those presented. *See Hoffner v. Bradshaw*, 622 F.3d 487, 505 (6th Cir. 2010). Here, given the lack of prejudice that resulted from the trial court's exclusion of the putative "threat" testimony, this issue was not "clearly stronger" than the seven issues that counsel did raise on appeal. *See People v. Gaines*, 856 N.W.2d 222, 236-37 (Mich. Ct. App. 2014); *cf. Bourne v. Curtin*, 666 F.3d 411, 414-15 (6th Cir. 2012). Hence this claim fails.

Finally, Jeffries argues that the prosecutor committed misconduct during closing arguments. Specifically, Jeffries asserts that the prosecutor "declar[ed] personal knowledge" that James—Jeffries's friend, who also saw the shootings—was alive at the time of trial even though she knew that James had died. Jeffries is right that a prosecutor might commit misconduct by arguing facts outside the evidence, misstating the evidence, or knowingly relying on false evidence. *See Byrd v. Collins*, 209 F.3d 486, 517, 535 (6th Cir. 2000). But a prosecutor is allowed—indeed, expected—to argue reasonable inferences from the evidence and to point out inconsistencies or holes in the defense. *See Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005). In the closing arguments here, the prosecutor urged the jury not to believe Jeffries for two reasons: first, Jeffries waited until trial to tell his story and offered nothing to back up his assertion that James, who could have supported his version of events, had died; and second, Jeffries did not explain in his trial testimony James's whereabouts at the crime scene. We agree with the district court that these arguments were permissible. Jeffries's prosecutorial-misconduct claim thus fails. So too do the related ineffective-assistance claims. *See Henness v. Bagley*, 644 F.3d 308, 319 (6th Cir. 2011).

*   *   *

The district court's judgment is affirmed.

**ALICE M. BATCHELDER, Circuit Judge, concurring.** I write separately because I disagree with the majority's decision to "cut to the merits of this case rather than first address the question whether Jeffries's claims are procedurally defaulted." Jeffries's claims were procedurally defaulted in state court, except for his claim of ineffective assistance of appellate counsel, which is meritless. I would affirm the district court on that ground.

Federal courts "may not review federal claims that were procedurally defaulted in state court." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017). This "fundamental tenet[] of federal review of state convictions," *id.*, ensures that federal courts show the respect to "the States and the States' procedural rules" that our federalist system requires. *Shorter v. Ohio Dep't of Rehab. and Corr.*, 180 F.3d 723, 725 (6th Cir. 1999) (quoting *Coleman v. Thompson*, 501 U.S. 722, 726 (1991)). Our ignoring procedural default arguments and providing an additional layer of appellate review to claims that have been procedurally defaulted in state court causes "significant harm" to "the important interest in finality served by state procedural rules," *Coleman*, 501 U.S. at 750, even when we ultimately deny the claims on the merits.

The Supreme Court has instructed us that "the procedural-bar issue should ordinarily be considered first." *Labrix v. Singletary*, 520 U.S. 518, 524 (1997). We have no obligation to raise sua sponte the issue of procedural default. *Trest v. Cain*, 522 U.S. 87, 89 (1997). But when a State raises the issue, we should take its arguments seriously and try to determine whether the claims have been procedurally defaulted. To be sure, the procedural default question will still not be clear in some cases and "[j]udicial economy might counsel" addressing the merits to avoid "complicated issues of state law." *Labrix*, 520 U.S. at 525. However, where a straightforward analysis of settled state procedural default law is possible, we cannot justify bypassing the procedural default issue. *Cf. Duyst v. Rapelje*, 483 F. App'x 36, 44–45 (6th Cir. 2012)

(addressing merits only where state procedural default law was unsettled); *Hudson v. Jones*, 351 F.3d 212, 215–16 (6th Cir. 2003) (bypassing the procedural default issue in an "especially complex" case where the state procedural rule was enacted "long after" defendant's conviction and direct appeal).

"A habeas petitioner procedurally defaults a claim if: (1) the petitioner fails to comply with a state procedural rule; (2) the state courts enforce the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner cannot show cause and prejudice excusing the default." *Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010) (en banc). Each of the claims that Jeffries raised in his state post-conviction proceedings, except for his ineffective assistance of appellate counsel claim, satisfies these four prongs and was procedurally defaulted.

*First*, Jeffries failed to comply with a state procedural rule. Michigan Court Rule 6.508(D)(3) precludes defendants from raising claims for relief in state post-conviction proceedings that could have been raised on direct appeal but were not. *Jones v. Bell*, 801 F.3d 556, 561–62 (6th Cir. 2015). All of the claims that Jeffries raised in his state post-conviction proceedings, except for his claim of ineffective assistance of appellate counsel, could have been raised on direct appeal but were not.

*Second*, the Michigan state courts enforced the rule against Jeffries. Both the Michigan Court of Appeals and the Michigan Supreme Court summarily denied Jeffries leave to appeal the trial court's denial of his post-conviction motion, citing Michigan Court Rule 6.508(D). However, we do not treat these summary orders as invoking procedural default. *Guilmette*, 624 F.3d at 286. Instead, we look through to the last "reasoned state judgment" to see if that court relied on procedural default, and if so, we assume that the later summary decisions also

rely on procedural default. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). Here, the last reasoned state judgment was the Michigan trial court's ruling from the bench denying Jeffries's post-conviction motion. The trial court did not expressly cite Michigan Court Rule 6.508(D)(3) in its ruling, but it clearly relied on "procedural default." The trial court's reasoning followed the text and structure of Michigan Court Rule 6.508(D)(3). It stated that "[s]ome of the claims should have been raised in the earlier appeal" and concluded that Jeffries's claim of ineffective assistance of appellate counsel did not establish good cause for failing to raise those claims on direct appeal. The Michigan courts, therefore, enforced Michigan Court Rule 6.508(D)(3) against Jeffries.

*Third*, the rule is an adequate and independent state ground for denying review. "It is well-established in this circuit that the procedural bar rule set forth in Rule 6.508(D) constitutes an adequate and independent state ground on which [Michigan courts] may rely in foreclosing review of federal claims." *Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005).

*Fourth*, Jeffries has not shown cause and prejudice excusing the procedural default. Jeffries argues that he was prejudiced by the ineffective assistance of appellate counsel. In Michigan, a claim of ineffective assistance of appellate counsel cannot excuse procedural default unless the petitioner shows that his appellate counsel was constitutionally deficient. *People v. Reed*, 535 N.W.2d 496, 500–01 (Mich. 1995). I agree with the majority that Jeffries has not shown that his appellate counsel was constitutionally deficient. Jeffries's ineffective assistance of appellate counsel claim cannot excuse the procedural default of the rest of his claims.

I would therefore affirm the district court's denial of Jeffries's habeas petition because Jeffries's claims were procedurally defaulted in state court, and his ineffective assistance of appellate counsel claim is meritless.