GRIFFIN, J., delivered the opinion of the court in which BOGGS, BATCHELDER, GIBBONS, ROGERS, SUTTON, COOK, McKEAGUE, and KETHLEDGE, JJ„ joined. DONALD, J. (pp. 681-700), delivered a separate dissenting opinion in which COLE, C.J., MOORE, CLAY, WHITE, and STRANCH, JJ., joined.
OPINION
GRIFFIN, Circuit Judge.
Congress passed and President Clinton signed the Antiterrorism and Effective Death Penalty Act (“AEDPA”), Pub.L. No. 104-182, 110 Stat. 1214, effective April 24, 1996. All habeas corpus actions filed thereafter, such as the present petition, are governed by AEDPA’s considerable restrictions on federal court review of state court judgments. In this case, the district court ruled that the limitations of AEDPA compelled the denial of the habe-as petition. We agree and therefore affirm.
I.
On the first day of Thomas Hill’s criminal trial, as potential jurors were “on their way up to the courtroom,” Hill informed the Wayne County (Michigan) Circuit Court that he wanted to represent himself. The state trial judge denied the request as follows:
No. The court is not going to allow that, especially at the last minute. Also, it’s not going to be helpful. There is no early indication of this. We are ready to proceed with the trial at this time. To be prepared for that, and to inform the defendant and have him prepared for following the rules of asking questions and rules of evidence, the court is going to have to do that during the trial. So at this point it’s not going to work.
You may consult with your attorney. We are going to have you sitting right next to him. If you would like paper and pen to tell him what you would like, how you would like things, you can do that.
We expect and want you to have all the participation you want. We also want you to have a legal representative to follow the rules of the courtroom. So at this time it is denied.
On September 11, 2007, a jury convicted Hill of armed robbery, Mich. Comp. Laws § 750.529, and carjacking, Mich. Comp. Laws § 750.529a(l). People v. Hill, 282 Mich.App. 538, 766 N.W.2d 17, 21 (2009). As a third-felony habitual offender, Mich. Comp. Laws § 769.11, the trial court sentenced him to concurrent prison terms of *675 twenty to forty years for each conviction. See Hill, 766 N.W.2d at 21.
On direct appeal, the Michigan Court of Appeals affirmed Hill’s convictions and sentences. Id. at 27. Regarding self-representation, it held that although the lower court failed to comply with People v. Anderson, 398 Mich. 361, 247 N.W.2d 857 (1976) (setting forth self-representation inquiry standards under state law), the record did not support that Hill’s request was knowingly and intelligently made. Hill, 766 N.W.2d at 27. In the last reasoned state court decision on the issue, the Michigan Supreme Court affirmed on different grounds. It held that Hill’s right to self-representation was not violated because his request was untimely and disruptive. People v. Hill, 485 Mich. 912, 773 N.W.2d 257, 257 (2009). Specifically, it stated:
[T]he ruling of the Wayne Circuit Court denying the request for self-representation “at this time” did not deny the defendant his constitutional right to self-representation where the defendant’s request was not timely and granting the request at that moment would have disrupted, unduly inconvenienced, and burdened the administration of the court’s business. The trial court also did not foreclose the defendant’s opportunity to raise the self-representation issue again after jury selection. The record reflects, however, that the defendant never' renewed his untimely request. For this reason, we agree with the Court of Appeals that the defendant’s constitutional right to self-representation was not violated.
Id. (citation omitted). The U.S. Supreme Court denied Hill’s petition for certiorari. Hill v. Michigan, 559 U.S. 1014, 130 S.Ct. 1899, 176 L.Ed.2d 378 (2010).
Shortly thereafter, Hill filed a timely habeas corpus petition. The magistrate judge issued a report recommending that the district court deny the petition because “[n]o United States Supreme Court case has directly addressed the timing of a request for self representation,” and, in light of clearly established law, the Michigan Supreme Court’s application was not unreasonable. The district court adopted the report over Hill’s objection, denied the petition, and declined to issue a certificate of appealability.
On appeal, we granted Hill a certificate of appealability on the sole issue of whether his right to self-representation had been violated. A panel of this court subsequently issued an unpublished order reversing the district court and granting the writ. Hill v. Curtin, No. 12-2528, 2013 WL 8446602 (6th Cir. Dec. 23, 2013). Thereafter, we granted Curtin’s petition for rehearing en banc and vacated our order. Hill v. Curtin, No. 12-2528, 2014 WL 1923210, at *1 (6th Cir. May 13, 2014).
II.
Congress enacted AEDPA to “reduce delays in the execution of state and federal criminal sentences, particularly in capital cases,” and “to further the principles of comity, finality, and federalism.” Woodford v. Garceau, 538 U.S. 202, 206, 123 S.Ct. 1398, 155 L.Ed.2d 363 (2003). “AEDPA recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights.” Burt v. Titlow, — U.S. -, 134 S.Ct. 10, 15, 187 L.Ed.2d 348 (2013). “ ‘[T]he States possess sovereignty concurrent with that of the Federal Government, subject only to limitations imposed by the Supremacy Clause. Under this system of dual sovereignty, [the Supreme Court has] consistently held that state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States.’ ” Id. (quoting Tafflin v. Levitt, 493 U.S. 455, *676 458, 110 S.Ct. 792, 107 L.Ed.2d 887 (1990)). “This principle applies to claimed violations of constitutional, as well as statutory, rights.” Id. “Recognizing the duty and ability of our state-court colleagues to adjudicate claims of constitutional wrong, AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court.” Id. at 15-Í6, 134 S.Ct. 10. It provides:
An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
28 U.S.C. § 2254(d).
A state court adjudication is “contrary to” Supreme Court precedent under § 2254(d)(1) “if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases” or “if the state court confronts a set of facts that are materially indistinguishable from a decision [of the Supreme Court] and nevertheless arrives at a [different result].” Lockyer v. Andrade, 538 U.S. 63, 73, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003) (internal quotation marks omitted). Under the “unreasonable application” clause of § 2254(d)(1), habeas relief is available if “the state court identifies the correct governing legal principle from [the Supreme Court’s] decisions but unreasonably applies that principle to the facts of the prisoner’s case.” Harris v. Haeberlin, 526 F.3d 903, 909 (6th Cir.2008) (internal quotation marks omitted). “In order for a federal court to find a state court’s application of [Supreme Court] precedent ‘unreasonable,’ the state court’s decision must have been more than incorrect or erroneous,” but rather “must have been ‘objectively unreasonable.’ ” Wiggins v. Smith, 539 U.S. 510, 520-21, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (citations omitted). Indeed, under the “unreasonable application” clause of § 2254(d)(1),
even clear error will not suffice. Rather, as a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court’s ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.
White v. Woodall, — U.S. -, 134 S.Ct. 1697, 1702, 188 L.Ed.2d 698 (2014) (citations, quotation marks, and alterations omitted).. “When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong.” Woods v. Donald, — U.S. -, 135 S.Ct. 1372, 1376, 191 L.Ed.2d 464 (2015). “Federal habeas review thus exists as ‘a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.’ ” Id. (quoting Harrington v. Richter, 562 U.S. 86, 102-03, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011)). In short, the standard for obtaining federal habeas relief is “difficult to meet ... because it was meant to be.” Burt, 134 S.Ct. at 16 (internal quotation marks omitted).
*677 “[W]hether the trial judge was right or wrong is not the pertinent question under AEDPA.” Renico v. Lett, 559 U.S. 766, 778 n. 3, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010). The question is whether the state court’s application of federal law was “objectively unreasonable.” White, 134 S.Ct. at 1702. The only definitive source of clearly established federal law for purposes of § 2254(d)(1) is the holdings — not dicta — of Supreme Court decisions. Id. “[CJircuit precedent does not constitute ‘clearly established Federal law, as determined by the Supreme Court,’ ” and “[i]t therefore cannot form the basis for habeas relief under AEDPA.” Parker v. Matthews, 567 U.S. -, 132 S.Ct. 2148, 2155, 183 L.Ed.2d 32 (2012) (per curiam).
III.
The Sixth Amendment provides that a criminal defendant shall have the right to the assistance of counsel for his defense. U.S. Const, amend. VI. In Faret-ta v. California, the Supreme Court recognized a corollary constitutional right “to proceed without counsel when [a defendant] voluntarily and intelligently elects to do so.” 422 U.S. 806, 807, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). “The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense.... Although not stated in the Amendment in so many words, the right to self-representation — to make one’s own defense personally — is thus necessarily implied by the structure of the Amendment. The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails.” Id. at 819-20, 95 S.Ct. 2525 (footnote omitted).
However, “[a]s the Faretta opinion recognized, the right to self-representation is not absolute.” Martinez v. Ct. of Appeal of Cal., Fourth App. Dist., 528 U.S. 152, 161, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000). First, a defendant may forfeit his self-representation right if he does not assert it “in a timely manner.” Id. at 162, 120 S.Ct. 684. Such a limit reflects that “[e]ven at the trial level ... the government’s interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant’s interest in acting as his own lawyer.” Id. In other words, if the right is asserted in an untimely manner, it may be deemed forfeited as a threshold matter.
Second, a defendant’s decision to represent himself — and thereby waive counsel — must be knowingly and voluntarily made. Faretta, 422 U.S. at 835, 95 S.Ct. 2525. “Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open.” Id. (citation omitted).. Because the dangers and disadvantages of self-representation during trial are so substantial, an accused will not be deemed to have validly waived his Sixth Amendment right to counsel unless the court has made “searching or formal inquiry” to ensure that his waiver is knowing, intelligent, and voluntary. Patterson v. Illinois, 487 U.S. 285, 292 & n. 4, 298-300, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988). This concern is obviated if self-representation is denied for some other reason, such as untimeliness. And this is exactly why habeas relief is not warranted in this case.
IV.
Habeas relief is not required on the ground that the trial court did not inquire into the basis of Hill’s self-repre *678 sentation request. First, the U.S. Supreme Court has never held that a court must inquire into the basis of a defendant’s request before' denying it as untimely. In other words, the trial court’s denial of Hill’s motion was not at odds with clearly established law. Second, the Michigan Supreme Court’s holding was not based on a determination that the trial court’s inquiry was Faretta-compliant. Rather, the Michigan Supreme Court held that the trial court did not violate Hill’s Sixth Amend-’ ment right because his “request was not timely and granting the request at that moment would have disrupted, unduly inconvenienced, and burdened the administration of the court’s business.” Hill, 773 N.W.2d at 257. The Michigan Supreme Court’s decision was not therefore contrary to or an unreasonable application of Faretta’s requirement to inquire into whether Hill’s request was knowing, intelligent, and voluntary.[1]
It is not clearly established that a trial court must conduct a Fareiia-compliant inquiry under the facts of this case. Although the Supreme Court has required such an inquiry before granting a self-representation request — which is, in effect, a waiver of the right to counsel — it has not required a court to inquire before denying a request as untimely. See Faretta, 422 U.S. at 835, 95 S.Ct. 2525 (The court should make the defendant “aware of the dangers and disadvantages of self-representation, so that the record will establish that ‘he knows what he is doing and his choice is made with eyes open.’ ” (quoting Adams v. U.S. ex rel. McCann, 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942))); Iowa v. Tovar, 541 U.S. 77, 88-89, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004) (“[B]efore a defendant may be allowed to proceed pro se, he must be warned specifically of the hazards ahead.”); Patterson, 487 U.S. at 298, 108 S.Ct. 2389 (noting that the Supreme Court has “imposed the most rigorous restrictions on the information that must be conveyed to a defendant, and the procedures that must be observed, before permitting him to waive his right to counsel at trial”); Johnson v. Zerbst, 304 U.S. 458, 465, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) (holding that a trial court’s determination as to the propriety of a waiver of counsel should appear on the record). As these cases illustrate, the purpose of the inquiry is to inform the defendant of the hazards of self-representation, not to determine whether a request is timely. Habe-as relief is not warranted on the ground that the trial court failed to conduct an inquiry.
Faretta did not establish a bright-line rule for timeliness. Its holding does, however, necessarily incorporate a loose timing element. The Faretta Court explicitly stated that the defendant’s request was “[w]ell before the date of trial,” and “weeks before trial.” 422 U.S. at 807, 835, 95 S.Ct. 2525. It then held, “[i]n forcing Faretta, under these circumstances, to accept against his will a state-appointed public defender, the California courts deprived him of his constitutional right to conduct his own defense.” Id. at 835, 95 S.Ct. 2525 (emphasis added). Thus, to the extent that Faretta addresses timeliness, as a matter of clearly established law it can only be read to require a court to grant a self-representation request when the request occurs weeks before trial. See Marshall v. Taylor, 395 F.3d 1058, 1060-61 (9th Cir.2005) (discussing Faretta’s “timing element”); see also United States v. Young, 287 F.3d 1352, 1354 (11th Cir.2002) (“The [.Faretta ] Court mentioned the timeliness of the request in both the opening paragraphs and the breadth with which *679 the Court announced its decision.”); Stenson v. Lambert, 504 F.3d 873, 884 (9th Cir.2007) (“Faretta does not articulate a specific time frame pursuant to which a claim for self-representation qualifies as timely.... The Supreme Court has never held that Faretta’s ‘weeks before trial’ standard requires courts to grant requests for self-representation coming on the eve of trial.”); Miller v. Thaler, 714 F.3d 897, 903 n. 5 (5th Cir.2013) (denying habeas relief on a claim that the state court violated Faretta in denying the defendant’s self-representation request “a few hours before jury selection”).
Beyond this loose limit, the Faretta Court did not address timeliness. Indeed, timing was one of the unanswered concerns that vexed the dissenting Justice Blackmun. Justice Blackmun raised a series of questions on how the right to self-representation would operate in practice, including: “How soon in the criminal proceeding must a defendant decide between proceeding by counsel or pro se? Must he be allowed to switch in midtrial?” Faretta, 422 U.S. at 852, 95 S.Ct. 2525 (Blackmun, J., dissenting). Although lower courts have since established rules regarding when a defendant must assert his right, see, e.g., Robards v. Rees, 789 F.2d 379, 383 (6th Cir.1986) (citing cases), the Supreme Court has never defined the precise contours of Faretta’s timing element. Nor did the Supreme Court announce any clearly established law on timeliness in Martinez. The Martinez Court held that the right to self-representation is “not absolute” and observed that “most courts require [a defendant] to [assert his right] in a timely manner.” 528 U.S. at 161-62, 120 S.Ct. 684.
Given the general standard articulated in Faretta, “a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.” Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S.Ct. 1411, 173 L.Ed.2d 251 (2009); see also Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) (“[Evaluating whether a rule application was unreasonable requires considering the rule’s specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.”); Woods, 135 S.Ct. at 1377 (“[W]here the precise contours of a right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner’s claims.” (internal quotation marks and alteration omitted)).
In this case, in light of Faretta’s general standard and Martinez’s unequivocal pronouncement that the right to self-representation is “not absolute” and observation that most courts find the right may be forfeited if not asserted “in .a timely manner,” the Michigan Supreme Court did not unreasonably apply clearly established federal law as determined by the Supreme Court.
V.
On appeal, Hill maintains that the government lacked a sufficient interest to outweigh his right to self-representation. First, he argues that a court may not deny a request based on timeliness alone — without regard to its effect on the proceedings — and, second, even considering its effect, his right outweighed the government’s interests. His assertions are unpersuasive under Faretta’s general standard and AEDPA deference.
Regarding his first point, the state court did not deny Hill’s request independent of the timing’s effect on the proceedings. Rather, the Michigan Supreme Court upheld the trial court’s denial specifically because “granting the request at that moment would have disrupted, unduly inconvenienced, and burdened the administration of the court’s business.” Hill, 773 N.W.2d at 257.
*680 With respect to his second point, Hill concedes that the government has a legitimate interest in trial integrity and efficiency. He nevertheless argues that his Faretta right outweighed those interests because he asserted his right once he realized he was dissatisfied with defense counsel. The Michigan Supreme Court’s decision was not “objectively unreasonable” merely because the trial court did not grant Hill’s request when Hill realized he desired new counsel on the morning of trial. Supreme Court precedent has never afforded defendants a right of self-representation based on dissatisfaction with counsel without regard to timing. Rather, the Supreme Court’s general timing standard recognizes that “[e]ven at the trial level ... the government’s interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant’s interest in acting as his own lawyer.” Martinez, 528 U.S. at 162, 120 S.Ct. 684; see also Stenson, 504 F.3d at 884-85; Miller, 714 F.3d at 903 n. 5. Moreover, a defendant’s subjective dissatisfaction with counsel would be an unworkable benchmark for timeliness. Moore v. Haviland, 531 F.3d 393, 405 (6th Cir.2008) (Rogers, J., dissenting) (“Timeliness ... cannot be measured from when a defendant perceives the need to represent himself.... Recognition of such' a right would effectively do away with any meaningful timeliness requirement.”). Thus, these arguments lack merit.
The dissenting opinion suggests that our opinion in Moore v. Haviland, 531 F.3d 393, “raises significant questions” about our reading of clearly established federal law. However, Moore is readily distinguishable. There, we held that a trial judge’s “fail[ure] to rule on [a defendant’s] unequivocal requests to proceed pro se” violated clearly established law. Id. at 404. Unlike the instant case, in Moore the defendant requested to represent himself multiple times but “the trial court flat-out failed to exercise its discretion and ultimately did not rule on those requests [and] let the issue go by default instead.” Id. at 403. Here, there is no question that the judge “promptly and fully” ruled on Hill’s motion. See id. at 403. Further, in Moore we expressly observed that the defendant’s requests “were not rejected for untimeliness, either at trial or by the state appellate court,” id., thus distinguishing it from the instant case. Our holding in Moore does not suggest that a trial judge must conduct a Faretta-compliant inquiry before denying a self-representation request as untimely. And even if it did, our court’s decision would not constitute clearly established federal law as determined by the Supreme Court.[2]
*681 VI.
Finally, Hill asserts that the Michigan Supreme Court’s decision was based on an unreasonable determination of the facts because the trial judge did not make a record of the reasons Hill’s last-minute request would have delayed or disrupted the proceedings. See 28 U.S.C. § 2254(d)(2). However, because the state court’s interpretation of the record was debatable, and therefore not unreasonable, habeas relief is not permissible.
“The term ‘unreasonable’ is no doubt difficult to define.” Wood v. Allen, 558 U.S. 290, 301, 130 S.Ct. 841, 175 L.Ed.2d 738 (2010) (internal quotation marks and alteration omitted). “It suffices to say, however, that a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.” Id. “[E]ven if reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court’s determination.” Id. (internal quotation marks and alterations omitted). In finding a state court’s factual determination unreasonable, we have construed this standard as requiring reversal only where “[n]o fair and reasonable reading of the record would permit” the factual determination. Rice v. White, 660 F.3d 242, 257 (6th Cir.2011).[3]
In this case, the Michigan Supreme Court affirmed the lower court’s denial of defendant’s request as “not timely” where “granting the request at that moment would have disrupted, unduly inconvenienced, and burdened the administration of the court’s business.” Hill, 773 N.W.2d at 257. Although the trial court did not make a lengthy record of the likely causes of delay or disruption, it did specify that preparing defendant to follow the “rules of asking questions and rules of evidence” would cause delay. A trial judge may fairly infer on the day of trial — as the jurors are on their way to the courtroom— that a defendant’s last-minute decision to represent himself would cause delay, whether or not the defendant requests a continuance. At a minimum, under these circumstances, the Michigan Supreme Court’s upholding of the trial court’s factual determination is debatable in light of the whole record and, therefore, not unreasonable.
VII.
For these reasons, we affirm the judgment of the district court denying the petition for habeas corpus.

. Hill does not argue that the state trial court erred in failing to conduct an inquiry. Appellant Supp. Reply Br., at 8 ("Hill never so argued.”).

. The dissent also addresses an argument not raised by Hill, but raised only in an amicus brief: that the Michigan trial court, by denying Hill’s request for self-representation on timeliness grounds, invoked a state-law procedural "rule” to justify avoiding the merits of his request. Because the procedural rule supposedly invoked — that a request for self-representation must be made if at all prior to the day of trial — is said to be inconsistent with pre-existing Michigan law and had not been previously announced, the dissent reasons that the Michigan courts applied an inadequate procedural bar.
The argument is not simply a variation on the claim at issue; it poses an entirely new challenge never before raised in the parties' briefing or in any court ruling. This new argument has been effectively forfeited by Hill.
In any event, the argument is without merit because the object of our scrutiny, the Michigan Supreme Court's succinct ruling, makes clear that Michigan law does not recognize a per se rule precluding a day-of-trial assertion of the right to self-representation. The Michigan Supreme Court’s ruling also makes clear that no per se procedural bar was invoked in this case. See Hill, 773 N.W.2d at 257 (citing People v. Russell, 471 Mich. 182, 684 N.W.2d 745, 750-51 (2004), and noting that Hill was *681 not prohibited from raising the self-representation issue again, even after jury selection).