CLAY, Circuit Judge,
dissenting.
Imagine that you are charged with a crime. Being too poor to afford a lawyer, the court appoints one for you. You then meet with your lawyer for the first time. Twelve minutes later, you stand in front of the judge as your lawyer says a single sentence on your behalf. You plead guilty and are sentenced to prison for two and a half years. This is hardly what one would call effective assistance of counsel; and such circumstances could not possibly satisfy the constitutional requirement that a defendant be afforded effective legal representation. Yet, this is exactly what happened to John Coleman when he showed up for court on July 27, 2015. When Coleman stood before the judge that day, he did not get the assistance of counsel guaranteed by the Sixth Amendment. What he got instead was justice on speed dial.
The reason for this dissent is simple. What happened to Coleman — an indigent defendant who had only twelve minutes to meet with his court-appointed lawyer for the first time before being sentenced to prison for violating his supervised release — is precisely the sort of deprivation of counsel against which the .Sixth Amendment was designed to protect. And because the constitutional violation here is so flagrant, Coleman does not need to show prejudice in order to prevail. Rather, because no lawyer could possibly provide effective advice in just twelve minutes — let alone read and digest a twenty-four page presentence investigation report and a ten-page supervised release violation report— Coleman must be presumed to have been prejudiced by the sequence of events which led to his two and a half year prison sentence. His case should therefore be remanded for resentencing.
I.
The majority gives the misimpression that this case should be reviewed in a habeas proceeding under the standard set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which ordinarily applies to claims of ineffective assistance of counsel.[1] But *619 Strickland — which requires a showing of prejudice — does not apply to this case. Rather, this case, which involves a claim of constructive denial of counsel, falls within the per se ineffective assistance of counsel exception set forth in United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). In Cronic, the Supreme Court held that there are “circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.” Id. at 658, 104 S.Ct. 2039. In other words, where the error is so obvious that a court should be aware of the threat to a defendant’s Sixth Amendment right to counsel, courts may do away with Strickland’s prejudice analysis altogether. Id. at 658-59, 104 S.Ct. 2039. See, e.g., United States v. Herrera-Zuniga, 571 F.3d 568, 591-93 (6th Cir. 2009) (discussing possibility that defense counsel’s submission of a letter to the court castigating his client and describing him as unworthy of empathy and “at the bottom of society’s hierarchy” as apparent professional malfeasance potentially constituting per se ineffectiveness); Rickman v. Bell, 131 F.3d 1150 (6th Cir. 1997) (per se violation of the right to counsel where the defense attorney displayed continual hostility to and contempt for his client).
Cronic, not Strickland, applies “when ... the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate.” Cronic, 466 U.S. at 659-60, 104 S.Ct. 2039. In explaining Cronic, the Supreme Court has identified three situations where a defendant need not show prejudice to establish ineffective assistance of counsel:
First and “[mjost obvious” was the “complete denial of counsel.” . . . Second, we posited that a similar presumption was warranted if “counsel entirely fails to subject the prosecution’s case to meaningful adversarial testing.” Finally, we said that in cases like Powell v. Alabama where counsel is called upon to render assistance under circumstances where competent counsel very likely could not, the defendant need not show that the proceedings were affected.
Bell v. Cone, 535 U.S. 685, 696, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (citations omitted).
II.
Not surprisingly, the majority does not acknowledge that constructive denial of counsel “can occur under circumstances where even competent counsel could not render assistance,” i.e., Cronic’s third scenario. United States v. Morris, 470 F.3d 596, 602 (6th Cir. 2006). And that is precisely the case here, since no lawyer — not even the most experienced and competent criminal defense attorney — could provide the kind of assistance of counsel required by the Sixth Amendment in just twelve minutes.
When the district court appointed Robert Abell to represent Coleman at his supervised release violation hearing, Abell literally knew nothing at all about Coleman. Abell knew nothing about Coleman’s criminal history; had not reviewed Coleman’s twenty-four page presentence investigation report (“PSR”) (see R. 264, PSR, PagelD# 640-63); had not reviewed Coleman’s ten-page supervised release violation report (see R. 261, Supervised Release Violation Report, PagelD# 610-19)[2]; and *620 likely had no idea what Coleman was even accused of doing. Yet, just twelve minutes after meeting his client for the first time— and after being handed thirty-four pages of material — Abell told the court his client would be pleading guilty, and declined the opportunity for an adjournment.
It would have been virtually impossible for Abell, or any lawyer for that matter, to read and digest thirty-four pages of reports in just twelve minutes — especially because the twenty-four page PSR included a calculation of Coleman’s guideline range, which can be complicated for even the most experienced attorneys to understand. See, e.g., Morris, 470 F.3d at 602 (finding constructive denial of counsel where attorney “was precluded from taking basic preparatory steps such as looking at [the defendant’s] prior record in conjunction with the federal sentencing guidelines so as to make an accurate prediction of his guideline range”).
Moreover, even if Abell, as the majority claims, could have discovered mitigating evidence in Coleman’s background during their twelve minute conference (minus whatever time Abell spent reading the relevant reports), it seems virtually impossible that Abell could have done any of the other things a criminal defense lawyer should do when meeting a client for the first time. See id. at 601 (noting that the “ABA Standards for Criminal Justice provide that a thorough discussion with the client is necessary at the outset of representation”) (emphasis added) (citing 1 ABA Standard for Criminal Justice 1(a) & (b)).
Abell should have, at a minimum, evaluated whether Coleman even understood the nature of the proceedings and was able to assist in his own defense, which minimally would have taken at least a few minutes. It also would have taken some time for Abell to establish rapport with Coleman — as any seasoned defense attorney can attest — and Abell would have had to explain the proceedings to Coleman and advise him of his rights. And who would think Abell could have done all of this while at the same time reading thirty-four pages of reports and discovering mitigating evidence in just twelve minutes.
When looking at all the things Abell should have done, it is obvious that Abell’s extreme lack of time for adequate preparation would have precluded any lawyer from providing effective advice or learning anything meaningful about his client. Having no more than twelve minutes to meet with his client and review all the evidence, Abell was in no position to serve as Coleman’s counsel. As a result, Abell failed to employ his legal skills in advocating Coleman’s position at his supervised release violation hearing.
Abell’s inability to serve as Coleman’s advocate is manifested in Abell’s failure to say anything about any of the mitigating factors the district court could have considered. Despite what the majority says, nothing in the record suggests Abell was aware of the mitigating circumstances, such as Coleman’s not getting the substance abuse treatment he needed, and having a wife and child at home. See Maj. Opn. at 613 (“[I]t appears that Abell himself may have been aware of these [mitigating] facts as well”). This is the extent of what Abell said on Coleman’s behalf:
[Court]: Would you like to speak on behalf of Mr. Coleman before I impose sentence?
[Abell]: Judge, I guess the record indicates at worst that Mr. Coleman *621 has an ongoing substance abuse problem that he’s struggled with significantly, and certainly the court has familiarity with his history and I am sime will take that into consideration when determining what action is appropriate today.
(R. 266 at 727-28.)
The district court only learned about the mitigating factors from Coleman, who spoke on his own behalf after Abell’s single sentence statement. See id. at 728-38 (conversation between Coleman and the court). Abell, on the other hand, hardly said anything. The only thing Abell even mentioned was Coleman’s substance abuse problem and his history of addiction, neither of which paint a pretty picture.
An attorney is expected to “forceful[ly] advoca[te]” on behalf of his client in court. Penson v. Ohio, 488 U.S. 75, 85, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988). The Sixth Amendment requires “careful advocacy to ensure that rights are not forgone and that substantial legal and factual arguments are not inadvertently passed over.” Id. The right to counsel, therefore, is the “right of the accused to require the prosecution’s case to survive the crucible of meaningful adversarial testing.” Cronic, 466 U.S. at 656, 104 S.Ct. 2039. “The Constitution’s guarantee of assistance of counsel cannot be satisfied by mere formal appointment.” Id. at 654-55, 104 S.Ct. 2039. “The paramount importance of vigorous representation follows from the nature of our adversarial system of justice.” Penson, 488 U.S. at 84, 109 S.Ct. 346. Our legal system is premised “on the well-tested principle that truth — as well as fairness — is best discovered by powerful statements on both sides of the question.” Id. (internal quotation marks omitted). Since it is unlikely that a criminal defendant will adequately be able to fight the government’s case without representation, id. the adversarial process requires that a defendant “have ‘counsel acting in the role of an advocate.’” Cronic, 466 U.S. at 656, 104 S.Ct. 2039 (quoting Anders v. California, 386 U.S. 738, 743, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967)).
As Justice Brennan put it, “[t]o satisfy the Constitution, counsel must function as an advocate for the defendant, as opposed to a friend of the court.” Jones v. Barnes, 463 U.S. 745, 758, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) (Brennan, J., dissenting); see also Ferri v. Ackerman, 444 U.S. 193, 204, 100 S.Ct. 402, 62 L.Ed.2d 355 (1979) (“Indeed, an indispensable element of the effective performance of [defense counsel’s] responsibilities is the ability to act independently of the Government and to oppose it in adversary litigation.”).
At no point during the hearing did Abell subject the prosecution’s violation of supervised release case to “meaningful adversarial testing.” Cronic, 466 U.S. at 656, 104 S.Ct. 2039. Instead, Abell did just the opposite — he spoke only to emphasize the negative aspects of Coleman’s background, i.e., Coleman’s substance abuse problem and history before the court, without any mention of the mitigating circumstances favoring his client. As a result, Coleman himself was forced to attempt to bring those mitigating factors to the court’s attention. And look what happened when Coleman, an indigent defendant with at most a GED[3], was forced to become his own advocate — he received a sentence that was three months above the high-end of the sentencing range. Abell did not act as an advocate for Coleman, but rather like a friend of the court and the prosecution— someone whose only role that day was to help the court fast-track Coleman through the system.
*622 m.
The majority opinion makes the incredible claim that what occurred at Coleman’s supervised release violation hearing was his own fault. In other words, the majority says that Coleman is to blame for being fast-tracked through the system simply because he asked for a new lawyer. See Maj. Opn. at 9 (“The speed with which Coleman’s case progressed was therefore determined by Coleman himself, not by Abell, the prosecutor, or the court.”).
The district court, when granting Coleman’s request for new counsel, said it best: “nothing is Mr. Coleman’s fault.” (R. 266 at 725.) And who would argue otherwise— that Coleman should be punished, ie., denied sufficient time to consult with his newly-appointed lawyer, all because he decided to ask for the appointment of new counsel. Essentially, what the majority opinion is saying is that Coleman’s request for new counsel justified the district court in failing to provide him with an attorney who would effectively advocate on his behalf.
The majority also suggests that Coleman’s not asking for an adjournment was his own fault. Here is why the majority opinion is so clearly wrong: Coleman could not possibly be expected to make an informed, strategic decision when he only had twelve minutes to get legal advice. There is no question that Coleman’s acquiescence in going forward was a bad idea; and we need look no further than the two and a half year prison sentence he received as evidence of that. But his agreeing to move forward was the result of not being adequately and properly counseled. In the tense environment of the courtroom setting, Coleman was introduced to his new attorney within seconds of being advised that his existing attorney was being relieved of all responsibility. This is what happens when events move so incredibly fast that the defendant is afforded no time to absorb or reflect upon the significance of what is happening. It is no surprise that a defendant is likely to make the wrong decision when his lawyer has only twelve minutes to meet with him for the first time, as occurred in this case.
It was not Coleman’s fault — as the district court explained' — that he wanted a new lawyer; obviously, from the district court’s comments, the court agreed that it was necessary or appropriate for Coleman to acquire new representation. Accordingly, it was not Coleman’s fault if there was the possibility of any delay resulting from his request for new counsel. Furthermore, it was not Coleman’s fault if any additional time was needed to bring his new counsel up to speed. Nothing that happened here was Coleman’s fault, including the court’s and his own attorney’s decision to rush him through the system. All Coleman did was request new counsel; and the majority’s suggestion that Coleman should be blamed for anything is completely baffling.
In that same vein, the majority suggests that Coleman’s single statement that he “wanted to get [the hearing] out of the way,” (R. 266 at 727), somehow constitutes a waiver of his Sixth Amendment right to counsel. In other words, the majority claims that Coleman waived his right to counsel by telling the court that he did not want a continuance and that he was ready to plead guilty. But the law requires more than that. “[A]n accused will not be deemed to have validly waived his Sixth Amendment right to counsel unless the court has made ‘searching or formal inquiry’ to ensure that his waiver is knowing, intelligent, and voluntary.” Hill v. Curtin, 792 F.3d 670, 677 (6th Cir. 2015) (en banc) (quoting Patterson v. Illinois, 487 U.S. 285, 292 & n. 4, 298-300, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988)). Where a fundamental constitutional right, such as the *623 right to counsel, is concerned, “courts indulge every reasonable presumption against waiver.” Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).
Of course, the district court in this case did not make any kind of inquiry into whether Coleman was waiving his right to counsel, and there can be no serious dispute that Coleman’s stray comment that he “wanted to get [the hearing] out of the way” did not constitute a valid waiver. And again, Coleman’s insistence on going forward means little, if anything — it only highlights his lack of understanding of the court’s procedures and what was about to happen.
IV.
When one looks at this case, one cannot help but think about all of the negative stereotypes about the public defender system. Very often in the public’s mind there is this sense that a public defender handles far too many cases at one time, and is not able to dedicate enough time to any particular client. It is probably accurate to say that among many criminal defendants, the public defender system has an unfortunate reputation. This case of rushed justice, in which the inadequacy of the legal representation amounted to virtually no representation at all, does nothing to help that image.
All of this begs the question of what the district court should have done, or how it should have conducted the sentencing proceeding. The answer is obvious. It would have been a simple matter for the court to have adjourned the sentencing to permit newly-appointed defense counsel the opportunity to acquaint himself with his client, the applicable sentencing guidelines, the evidence, and the facts of the case. Obviously, at this juncture, this Court should remand for resentencing with the simple admonition that the district court permit Coleman’s attorney to acquaint himself with the matter in advance of re-sentencing.
The bottom line is that Abell was placed in circumstances in which even the most experienced and competent counsel would not have been able to render effective assistance; and Abell completely failed to subject the prosecution’s case to meaningful adversarial testing. As a result, Coleman was constructively denied counsel, and has established a Sixth Amendment violation under Cronic. And because Coleman is not required, under these circumstances, to show prejudice, his case should be remanded for resentencing. To be blunt, if this situation does not amount to constructive denial of counsel, then nothing will.

. The majority attempts to create a distraction with its multiple suggestions that this case is more appropriate for collateral review, i.e., in a habeas proceeding. Although it is true that "[a]s a general rule, this Court declines to rule on claims of ineffective assistance of counsel on direct appeal,” United States v. Detloff, 794 F.3d 588, 594 (6th Cir. 2015), that rule only applies when “the record is ... inadequate to evaluate such a claim.” United States v. Foreman, 323 F.3d 498, 502 (6th Cir. 2003). That is not the case here since there is nothing to be gained from any further development of the record. Rather, because *619 the "parties have adequately developed the record, ... the court can elect to hear the issue on direct appeal.” United States v. Pierce, 62 F.3d 818, 833 (6th Cir. 1995).

. As the majority points out, when the district court appointed Abell to represent Coleman, it confirmed that Abell had a copy of Coleman’s PSR and also the supervised release *620 violation report prepared by the probation office. (See R. 266, Supervised Release Violation Hearing Transcript, PagelD# 725.)

. The PSR lists Coleman’s education as: “GED (unverified)” (R. 264 at 642).