NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0139n.06

Case No. 22-1636

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| BRIA C. BLACKMON, | ) | **FILED**<br>Mar 20, 2023<br>DEBORAH S. HUNT, Clerk |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| SHAWN BREWER, Warden, | ) | |
| Respondent-Appellee. | ) | |
| | ) | **O P I N I O N** |

Before: CLAY, McKEAGUE, and STRANCH, Circuit Judges.

**McKEAGUE, Circuit Judge.** A state court jury found Bria Blackmon guilty of first-degree premeditated murder, armed robbery, conspiracy to commit armed robbery, and illegal use of a financial transaction device. She was sentenced to life in prison. On direct appeal, Michigan courts upheld her conviction and sentence. She now seeks habeas relief in federal court, arguing that the Michigan Court of Appeals decision regarding her ineffective assistance of counsel claim was objectively unreasonable. Because it was not, we affirm.

I.

Blackmon and her half-brother, Demonte Easterling, were charged following the murder of Michael Scott Freeland and tried together before a single jury. *People v. Blackmon*, No. 332644, 2017 WL 5759952, at *1 (Mich. Ct. App. Nov. 28, 2017). The state court laid out the facts of this case as follows:

Defendants' convictions arise from the robbery and beating death of Michael Scott Freeland at his home in Sterling Heights, Michigan. Freeland had posted an Internet advertisement seeking a submissive woman under the age of 30 who was willing to have his children. Blackmon responded to the advertisement and began a relationship with Freeland. Early in the morning on March 27, 2015, about a week after Blackmon and Freeland began their relationship, Blackmon and Easterling went to Freeland's home. Later that morning, authorities discovered Freeland's body inside his house after a neighbor reported a fire at the house.

An autopsy revealed that Freeland had several blunt force injuries to his face and head, including lacerations to his scalp and face, bruising on his scalp and face, multiple skull fractures, and injury to his brain. He also had defensive wounds on his right forearm and hand. The cause of death was blunt force trauma to the head.

The prosecution's theory at trial was that both defendants beat Freeland, intending to kill and rob him. A few days before the offense, Blackmon had tried to recruit a friend to kill an acquaintance. Cell phone records showed that both defendants were in the area of Freeland's home on the morning of March 27, and surveillance recordings captured Blackmon purchasing gasoline at a Sunoco station and purchasing a computer tablet at a Meijer store with Freeland's credit card. Other attempted purchases by Blackmon using Freeland's credit card were denied. A search of Blackmon's vehicle led to the discovery of a jacket with Freeland's blood and DNA on it. Freeland had a medical marijuana card, and a jar of marijuana was also discovered inside Blackmon's vehicle. Several of Freeland's credit cards and pieces of identification were discovered during a search of Blackmon's home.

Both defendants gave multiple statements to the police. Blackmon initially admitted being at Freeland's home, and admitted striking him with lamp and a baseball bat after an argument, but claimed that he was alive and responsive when she left. In a second statement, she again admitted hitting Freeland with a bat and a lamp after an argument, and also admitted taking his wallet. Easterling first told the police that he went with Blackmon to Freeland's house to buy marijuana, but denied being involved in any plan to assault or rob Freeland. In a second statement, Easterling told the police that he punched Freeland and knocked him to the floor, and then took a laptop computer from his house. Easterling said that, after leaving the house, he had his girlfriend pick him up and he threw a dumbbell out the car window while driving along I-75. The police later found two dumbbells along I-75 that contained Freeland's DNA. Easterling testified at trial and denied assaulting or robbing Freeland. He also denied telling the police that he assaulted or robbed Freeland.

*Id.* at *1–2. We apply a presumption of correctness to these findings. *See Treesh v. Bagley*, 612

F.3d 424, 430 n.1 (6th Cir. 2010) (citing *Sumner v. Mata,* 449 U.S. 539, 545–46 (1981)).

Blackmon did not testify at the trial or call any witnesses. Her primary defense was that there was reasonable doubt of her guilt as "there is no definite proof in existence that Ms. Blackmon was the cause of Mr. Freeland's demise." R. 7-12, PID # 838.

The trial court was aware of the issues that arise from a joint trial and discussed severing the trials or having two juries. Instead, the issue was resolved with the prosecution's redaction of the defendants' confessions to reflect only admission of their own involvement (and not the involvement of their co-defendant).

The jury convicted Blackmon of first-degree premeditated murder, first-degree felony murder, armed robbery, conspiracy to commit armed robbery, and illegal use of a financial transaction device, and convicted Easterling of lesser charges. *Blackmon*, 2017 WL 5759952, at *1. Blackmon was sentenced to two terms of life imprisonment without the possibility of parole for the first-degree murder convictions, with lesser concurrent terms for her other convictions. *Id.*

Blackmon appealed, arguing that she received ineffective assistance of trial counsel, *id.* at *2–4, the trial court erred by failing to dismiss her case for speedy trial violations, *id.* at *5, her dual first-degree murder convictions violated double jeopardy protections, *id.* at *6, and that the admission of photographs from the victim's autopsy was prejudicial, *id.* The Michigan Court of Appeals agreed that her dual first-degree murder convictions, both arising from the death of the same victim, violated double jeopardy protections, and remanded the case for modification of her sentence to clarify that it was only a single judgment and single sentence. *Id.* On Blackmon's other arguments, the court affirmed. Relevant here, the court agreed with Blackmon that her trial attorney provided deficient performance in failing to move to sever the trial:

> Easterling's presence in the proceeding opened the door for the prosecution to introduce Easterling's out-of-court statements to police that were detrimental to Blackmon, and Easterling's defense was to shift the blame to Blackmon. Under these circumstances, trial counsel should have moved to sever the trials under either

MCR 6.121(C) or (D) and failure to do so amounted to deficient performance on an objective standard of reasonableness. [*People v. Pickens*, 521 N.W.2d 797, 815 (Mich. 1994)].

*Blackmon*, 2017 WL 5759952, at *4. But because the court found that this deficient performance did not prejudice Blackmon, it affirmed. *Id.* The Michigan Supreme Court denied leave to appeal. *People v. Blackmon*, 911 N.W.2d 701 (Mich. 2018).

Next, Blackmon petitioned the U.S. District Court for the Eastern District of Michigan for a writ of habeas corpus under 28 U.S.C. § 2254. Pro se, she raised three grounds for relief: deprivation of effective assistance of counsel, violation of her speedy trial right, and double jeopardy violations. She subsequently retained counsel, who filed an amended petition, raising solely the issue of whether her trial attorney's failure to move for a separate trial was prejudicial. The district court found the state court's conclusion on prejudice "objectively reasonable and [] entitled to deference," and denied the amended petition, but granted a certificate of appealability on that issue. R. 15, PID # 1337, 1352. Blackmon timely appealed.

## II.

In a habeas appeal, we review de novo a district court's legal conclusions and will not set aside findings of fact unless they are clearly erroneous. *Fleming v. Metrish*, 556 F.3d 520, 524 (6th Cir. 2009). However, when we review state court determinations, we apply the standard provided in the Antiterrorism and Effective Death Penalty Act:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Hill v. Curtin*, 792 F.3d 670, 676 (6th Cir. 2015). A state court decision is contrary to clearly established federal law if it is "diametrically different, opposite in character or nature, or mutually opposed" to a Supreme Court decision. *Fleming*, 556 F.3d at 525 (quoting *Williams v. Taylor,* 529 U.S. 362, 405 (2000)). And it is an unreasonable application of clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Hill*, 792 F.3d at 676 (quoting *Harris v. Haeberlin,* 526 F.3d 903, 909 (6th Cir. 2008)). "In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous," but rather it "must have been 'objectively unreasonable.'" *Id.* (quoting *Wiggins v. Smith,* 539 U.S. 510, 520–21 (2003)).

### III.

To establish ineffective assistance of counsel, a defendant must show deficient performance and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). That Blackmon's trial counsel performed deficiently is not up for debate today.[1] Instead, we review only the state court's holding that, although deficient, the performance of Blackmon's trial counsel was not prejudicial.

Under the prejudice prong, a defendant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

---

[1] If it were, the Government states that it would challenge the state court finding that counsel acted deficiently. Appellee Br. at 17.

*Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 694). This is "never an easy task," *Padilla v. Kentucky,* 559 U.S. 356, 371 (2010), especially in the habeas context, *Richter,* 562 U.S. at 105 ("The *Strickland* standard is a general one, so the range of reasonable applications is substantial."). The question "is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (quotations omitted)). "Whether an error actually prejudiced a defendant is weighed against the 'totality of the evidence before the judge or jury.'" *Higgins v. Renico*, 470 F.3d 624, 634 (6th Cir. 2006) (quoting *Strickland*, 466 U.S. at 695).

As a preliminary matter, Blackmon argues that *Zafiro v. United States*, 506 U.S. 534 (1993) controls here. In *Zafiro*, the defendants sought a bright line rule requiring severance whenever co-defendants have "conflicting defenses." *Id.* at 538. But the Court denied that request and instead instructed district courts to grant motions to sever "only if there is a serious *risk* that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539 (emphasis added). A serious risk "*might* occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant." *Id.* (emphasis added). The Court concluded that "[w]hen the risk of prejudice is high, a district court is more likely to determine that separate trials are necessary, but . . . less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Id.*

But *Zafiro* does not answer the prejudice question in this case. *Zafiro* stands for the proposition that Federal Rule of Criminal Procedure 14 does not require severance as a matter of

law where co-defendants proffer conflicting defenses, even if prejudice is shown; the rule "leaves the determination of risk of prejudice and any remedy that may be necessary to the sound discretion of the district courts." *Id.* at 539–41. *Zafiro* only noted certain situations in which a district court *should* sever a trial due to *risk* of prejudice, *id.* at 539, which Blackmon essentially admits in her brief, *see* Appellant's Br. at 25 (*Zafiro* "consider[ed] the situations where a joint trial *may* result in prejudice. . . ." (emphasis added)). The Court did not lay out bright line rules demarcating where prejudice per se occurs due to failure to sever, and in fact noted that "[t]he risk of prejudice will vary with the facts in each case." *Zafiro*, 506 U.S. at 539. Indeed, the Court found a lack of prejudice arising from the specific facts of that case. *Id.* at 541. *Zafiro* simply does not speak to the issue of whether prejudice *actually occurred* in Blackmon's trial due to failure to sever.

Additionally, *Zafiro* involved a direct appeal of a federal criminal case, and interpreted the Federal Rules of Criminal Procedure, which did not govern Blackmon's trial. *Zafiro* thus cannot constitute clearly established constitutional law invalidating the state court's decision regarding prejudice in Blackmon's case. *Hedlund v. Ryan*, 854 F.3d 557, 571 (9th Cir. 2017) ("*Zafiro* does not apply to § 2254 cases. *Zafiro* was a direct appeal originating in federal district court."). *Cf. Phillips v. Million,* 374 F.3d 395, 398 (6th Cir. 2004) ("*Zafiro* involved the interpretation of Federal Rules of Criminal Procedure 8, 14, and 18, not the United States Constitution. *Zafiro* thus has no precedential weight in reviewing state court proceedings on due process grounds . . ."); *see also Early v. Packer*, 537 U.S. 3, 10 (2002) (explaining that when a Supreme Court decision does not purport to interpret any provision of the Constitution, "[t]hat alone would be enough to defeat a claim that their application to state-court proceedings is clearly established" (quotation and citation omitted)). Blackmon points us to no case analyzing prejudice due to failure to sever through a *constitutional* lens that could constitute clearly established law which the state court's

decision was clearly contrary to or an unreasonable application of, which would justify habeas relief. *Zafiro* is not that case.

Turning back to the merits, it was not unreasonable for the Michigan Court of Appeals to conclude that Blackmon failed to establish prejudice under the applicable highly deferential standard. Blackmon appears to argue that her trial counsel's failure to move to sever prejudiced her trial because the joint trial (1) prevented her from/restricted her in "advanc[ing] her defense that it was [Easterling] that had murdered decedent," and (2) "opened the door for the prosecution to introduce Easterling's out-of-court statements to police that were detrimental to Blackmon." [2] Appellant's Br. at 22, 25 (quoting *Blackmon*, 2017 WL 5759952, at \*4).

---

[2] The state appellate court explained that the following statements were admissible against Blackmon as a result of the joint trial:

> Specifically, at trial Detective Finkbeiner testified about out-of-court statements Easterling made to police that implicated Blackmon in the murder while tending to absolve Easterling. While Finkbeiner's direct testimony was redacted, it was clearly implied that Blackmon delivered the first blow to the victim.
>
> . . .
>
> Moreover, on redirect, Finkbeiner offered more extensive testimony about the second out-of-court statement that Easterling gave to police. The testimony was admitted in response to Easterling's testimony that "opened the door," and was admissible as an admission. Specifically, Finkbeiner testified that Easterling informed police that Blackmon wanted to assault the victim, asked him if he had a gun, and gave him a brick to use to assault the victim. Easterling stated that he and defendant went to the victim's house, and Blackmon refused his requests to leave, and instead indicated that "this is going to happen." Easterling described how he heard the victim state, "ouch," and saw Blackmon and the victim "wrapped up;" Easterling admitted punching the victim twice, but stated that Blackmon kept hitting the victim "over and over" and that Blackmon used a dumbbell while assaulting the victim.

*Blackmon*, 2017 WL 5759952, at \*3–4.

However, as the Michigan Court of Appeals reasonably concluded, even if the trials should have been separated, there was overwhelming evidence of Blackmon's guilt such that the failure to sever was not prejudicial. *See Blackmon*, 2017 WL 5759952, at *4. Specifically:

● Jason Hise testified that at about the time of the murder, Blackmon solicited his help in killing a man and stealing his money, electronics, and marijuana. Blackmon later told Hise that she had "tooken [sic] care of it" when Hise asked about the man she wanted killed.

● Other evidence showed that the victim had posted an ad on Craigslist and that Blackmon responded to the ad and Blackmon's contact information was on the victim's phone. Blackmon's phone had messages on it to Easterling stating "we doing this," and she referenced hitting someone and looking on laptops to acquire bank information. Other text messages showed that Blackmon tried to sell marijuana after the murder and there were messages where Blackmon appeared to refer to the offense.

● Police found items in Blackmon's home that were purchased at a Meijer early on the morning that the victim's body was discovered. There was also evidence that the victim's credit card was used between 3:00 and 3:30 a.m. at a Meijer and Blackmon appeared on a store surveillance camera at that time.

● Other evidence showed that Blackmon's vehicle appeared on a gas station surveillance camera where the victim's credit card was used on the same morning that the victim was murdered.

● Police also found the victim's passport, medical marijuana card, credit card and driver's license at Blackmon's residence.

● The evidence also showed that defendant's vehicle had blood on the door handle and there was blood on a jacket inside the vehicle that contained the victim's DNA.

● Moreover, Blackmon admitted to police that she responded to the victim's personal ad, that she had recently started a relationship with him, and that she wanted to be "spoiled" by the victim. Blackmon also admitted to police that she hit the victim on the head with a lamp and a baseball bat and that she kicked him in the groin.

R. 15, PID # 1348 (quoting *Blackmon*, 2017 WL 5759952, at *4). Blackmon does not demonstrate that with the admission of the evidence she claims was inadmissible due to the joint nature of the trial, or with the exclusion of detrimental evidence allowed in through Easterling's presence, there

is a "a reasonable probability that . . . the result of the proceeding would have been different" in the face of this overwhelming evidence of her guilt. *Richter*, 562 U.S. at 104. The mountain of incriminating evidence demonstrates that the state court decision "was not so obviously wrong as to be 'beyond any possibility for fairminded disagreement.'" *Shinn v. Kayer*, 141 S. Ct. 517, 523 (2020) (quoting *Richter*, 562 U.S. at 103). Rather, the state court reasonably concluded that Blackmon suffered no prejudice as a result of the deficient performance of her attorney, because any prejudice stemming from the joint trial paled in comparison to the plethora of evidence against her. *See Mays v. Hines*, 141 S. Ct. 1145, 1146, *reh'g denied,* 141 S. Ct. 2693 (2021); *Strickland,* 466 U.S. at 696 ("[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.").

Even if there were not overwhelming evidence of guilt, Blackmon's prejudice argument is weak. She alleges that she was restricted in her ability to present a defense blaming Easterling for the murder. She does not contend that she has actual evidence that Easterling acted alone, just that she should have been able to argue that Easterling acted alone. But she was free to advance this defense. *See Hutchison v. Bell*, 303 F.3d 720, 731 (6th Cir. 2002); *cf. United States v. Fields*, 763 F.3d 443, 457–58 (6th Cir. 2014) ("Hostility among defendants or the attempt of one defendant to save himself by inculpating another does not require that defendants be tried separately." (citation omitted)). Indeed, it appears that is what Easterling did.

As far as evidence being restricted goes, Blackmon does not clarify *what* evidence was restricted. At one point, she argues that evidence of her mental health struggles and traumatic events she experienced "would be brought out to the jury to assist in understanding how Blackmon deals with matters and expresses herself . . ." Reply Br. at 4. Blackmon contends that this evidence would have added context to the statements she made. But she provides no explanation as to why

- 10 -

that evidence was not admissible in her original trial, or why inadmissibility would hinge on the joint nature of her trial. She also says that her text messages that were provided at trial "were not explained nor were the circumstances attendant to those statements made known to the jury." Appellant Br. at 23. But again, although Blackmon argues this evidence is admissible now, she does not explain why it was not admissible at her original trial.

Additionally, jury instructions about how to deal with multiple defendants in a single trial "often will suffice to cure any risk of prejudice." *Zafiro*, 506 U.S. at 539. Here, the trial court told the jury to treat Blackmon and Easterling separately on at least two different occasions. First, in its opening instructions, it told the jurors that:

> There is more than one defendant in this case. The fact that they are on trial together is not evidence that they were associated with each other or that either one is guilty. You should consider each defendant separately. Each is entitled to have his and her case decided on the evidence and the law that applies to him and her. If any evidence is limited to one defendant you should not consider it for the other defendant.

R. 7-9, PID # 364. Similarly, in its final instructions to the jury, it stated:

> The defendants are each charged with multiple counts. That is, Bria Blackmon with the crimes of first-degree murder, felony murder, armed robbery, illegal use of a financial transaction device, and conspiracy to commit armed robbery; Demonte Easterling with the crimes of first-degree murder, felony murder, armed robbery, and conspiracy to commit armed robbery. These are separate crimes and the prosecutor is charging that each defendant committed them. You must consider each crime separately in light of all the evidence. You must return a separate verdict for each defendant. For each defendant you may return a verdict of guilty of one or more of the alleged crimes, guilty of a less serious crime, or not guilty. Remember that you must consider each defendant separately.

R. 7-12, PID # 875–76; *see also* R. 7-12, PID # 886 (instructing the jury that "every defendant has the absolute right not to testify"). Together, these instructions are similar to those given in *Zafiro*, where the Court said that "even if there were some risk of prejudice, here it is of the type that can be cured with proper instructions, and 'juries are presumed to follow their instructions.'" *Zafiro*,

506 U.S. at 540 (citation omitted). The same is true here; although there may have been some risk of prejudice from trying Blackmon and Easterling together, these instructions sufficed to cure that risk.

Blackmon's strongest prejudice argument is that the joint trial allowed detrimental out-of-court statements made by Easterling to be introduced at trial, which the state court found did occur. *Blackmon*, 2017 WL 5759952, at \*4. However, in light of the overwhelming amount of evidence of Blackmon's guilt presented at trial separate from these statements, it was not unreasonable for the state court to conclude that Blackmon failed to show that with the exclusion of those statements there was a fair probability that the outcome of the trial would have been different. *See, e.g.*, *Cyars v. Hofbauer*, 383 F.3d 485, 493 (6th Cir. 2004) ("Petitioner cannot carry his burden [under AEDPA] because the Michigan court's conclusion that Petitioner did not suffer any prejudice *is* reasonable in light of the overwhelming circumstantial evidence of his guilt."). Thus, Blackmon fails to demonstrate that the state court's application of *Strickland's* prejudice prong was unreasonable, and she is therefore not entitled to habeas relief.

IV.

For the foregoing reasons, we AFFIRM the judgment of the district court.